Case #:	DOCUMENT 1	Filed November 9, 2023

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Plaintiff: PETER GARRISON, *pro se*<br><br>vs.<br><br>Defendants:<br>**MINNESOTA DEPARTMENT OF REVENUE OF THE STATE OF MINNESOTA** with service to Commissioner Paul Marquart;<br><br>**Gina Armacher**, Individually and in her official capacity as Director, Sales and Use Tax Division, for the Minnesota Department of Revenue;<br><br>**Kennedy Gisemba,** Individually and in his official capacity as Assistant Director of the Sales and Use Tax Division;<br><br>**David Denault,** Individually and in his Official capacity as Revenue Tax Supervisor, with the Minnesota Department of Revenue; and<br><br>**Angela Smedlund,** Individually and in her Official capacity as Labor Relations Consultant, for the Minnesota Department of Revenue | **Civil Action No.**<br><br>23-cv-3485 (KMM/DTS)<br><br>**COMPLAINT AND REQUEST FOR DAMAGES**<br><br>**JURY TRIAL DEMAND** |

# COMPLAINT

NOW COMES Plaintiff Peter Garrison proceeding Pro Se, to bring this action requesting monetary, declaratory, injunctive and equitable relief, compensatory damages, back-pay, forward-pay, punitive damages, attorney fees, reimbursement of all legal expenses for the illegal acts of unlawful discrimination, harassment, hostile work environment and retaliation against plaintiff Garrison, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§

RECEIVED
NOV 09 2023
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

| Case #: | DOCUMENT 1 | Filed November 9, 2023 |
|---|---|---|

2000e et seq. (Title VII); statutory and regulatory provisions of Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12111–12117, which incorporate, through 42 U.S.C. § 12117(a), the powers, remedies, and procedures set forth in Title VII; for Claims of unlawful deprivation of Garrison's Constitutional Rights for Substantive Due Process Claims, Procedural Due Process, and Equal Protection under the color of official duties, by the defendants in their individual capacities, in violation of Section 1983 of the Civil Rights Act of 1866, 42 U.S.C. § 1983 ("Section 1983"); Claims for the violation of the rights guaranteed by § 1981 for prohibiting racial discrimination in the performance of contracts, against the defendant state actors, in their individual capacities, under the color of their official duties, actionable under Section 1983 of the Civil Rights Act of 1866, 42 U.S.C. § 1983 ("Section 1983"); Claims of violations of Americans with Disabilities Act for unlawful discrimination in the terms, conditions and/or privileges of employment for deliberately subjecting Garrison to a hostile and discriminatory work environment, and defacto denial of Garrison's requests for an accommodation, or to engage in the interactive process (29 C.F.R. § 1630.2(j)(3)(iii)) directly caused by the hostile work environment that Garrison was subjected to, by defendants and the deliberate indifference and direct participation by each of the defendants, severe and pervasive enough to result in a violation Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101 et seq. ("ADA"); and Claims for Attorney's fees which are available through 42 U.S.C. § 1988. Claims of Civil Rights violations under § 1983 occurred "under color of state law" and resulted in the deprivation of the plaintiff's constitutional right and federal statutory rights.

## JURY TRIAL DEMAND

*A previous Pro Se lawsuit was filed on August 24, 2016, which was dismissed in violation of Federal Rules of Civil Procedures. That case was not litigated because the Federal District Court Ruled that I signed an agreement not to sue, albeit under the threat of termination. There are no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint.*

> Commented [PG1]:

## I   JURISDICTION AND VENUE

1. The United State District Court has jurisdiction over section 1983 pursuant to action pursuant to 28 U.S.C. §§ 1331 and 1343(3), as this action involves federal questions regarding the deprivation of Plaintiff's civil rights under Title VII, Section 1981 and the ADA. 28 U.S.C. § 1331, which gives district courts

original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States. 28 U.S.C. § 1343 (3) and (4), gives district court jurisdiction over actions to secure civil rights extended by the United States government, and 28 U.S.C. § 2201 gives district court jurisdiction to grant a declaratory judgment. An express grant of federal court jurisdiction over these federal claims is found in Title VII at 42 U.S.C. §2000e-5(f)(3).

2. The United State District Court has jurisdiction pursuant to 42 U.S.C. §1981, §1983, and §1988.

3. This Court has supplemental jurisdiction over pendent state law claims pursuant to 28 U.S.C. § 1367, which gives district court jurisdiction over state law claims.

4. This Court has authority to grant a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201–2202 and authority to grant equitable relief and monetary damages pursuant to 42 U.S.C. § 12117(a).

5. Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practice is alleged to have been committed in the State of Minnesota. Venue is also proper in this district under 28 U.S.C. § 1391 because the events or omissions giving rise to the Complaint occurred in this district.

## II    PRELIMINARY STATEMENT

6. This case has its roots in the much-debated question of the last half of the 20th century; that being the impact of the retirements of the Baby-Boomer generation would have on business. Most agreed that the Sales Tax Division, which had its impetus in 1967, experienced a drain of experience and knowledge in the workforce, which is evidenced by the significant decline in audit revenue production since 2011-2012 (excluding one audit). Nowhere has this been more evident than the Sales Tax Division of the Minnesota

Case #:                              DOCUMENT 1                      Filed November 9, 2023

Department of Revenue, as the experienced personnel who began their careers when the State of Minnesota instituted Sales Tax laws in 1967. In fact, in the years leading up to his retirement, former Assistant Commissioner Larry Wilkie, often commented in that the Sales Tax Division would experience a "brain drain" when the division experiences the widespread retirements of baby-boomers, which is evidenced by the significant reductions in audit revenue in the Sales Tax Division, over the past decade.

7.  Although the decline of knowledge and experience was expected, no-one expected that in the absence of knowledgeable and experienced leadership, would result in a management by personal biases and stereotypes, where management decision were made based on personal beliefs and bullying.

8.  Despite never performing a sales tax audit in her career, Cathy W*** became the Sales Tax Division Director, after Larry Wilkie became the Assistant Commissioner. However, she was relieved of the position due to a lack of management skills, as she routinely bullied individuals within and outside of the Division.

> From: C██ W██ (MDOR)
> Sent: Wednesday, January 07, 2009 12:29 PM
> To: #MDOR_SUT All
> Subject: Change in the Director of the Sales and Use Tax Division
>
> I would like to be the first to share this news with you. This morning I was informed by Ward E██ and Dan S██ that I will not be certified as the Director of the Sales and Use Tax Division because it is their opinion that I don't possess the managerial competencies necessary to succeed in this position. Effective today, George H██ has been named the new director. An official notice will be posted on Business Notices.

9.  In addition to incompetent management making arbitrary decisions based on their personal biases and stereotypes, the Department of Revenue has paid tens of thousands of dollars to a law firm, who advises the Department of Termination Strategies. This has led to Department of Revenue, imposing false and arbitrary disciplinary actions, to meet a certain objective; but nonetheless, violate the

| Case #: | DOCUMENT 1 | Filed November 9, 2023 |

Constitutional Rights of the employees that are the subjects of the termination strategies. The record shows that these termination strategies have been generally been imposed on black employees of the Department of Revenue.

10. Please note that prior to the widespread retirements of baby-boomers in the Sales Tax Division, the division had never had a racial discrimination complaint in its history, much less a discrimination lawsuit. Since the widespread changes in management, several black employees, including formerly highly regarded auditors like myself, have been ostracized, marginalized and subjected to manipulation of performance factors, solely to discredit their performance. Consequently, despite only a handful of black American employees in the Sales Tax Division, several have sought employment elsewhere, while those of us willing to fight for our rights - have fought back.

11. Several discrimination complaints have been filed with the agency, while others, like myself reluctantly filed discrimination lawsuits in state and federal court. Sadly, although the complaints of discrimination were absolutely valid, the court have been dismissed the lawsuits under the guise of judicial efficiency, combined with the subliminal perception that discrimination complaints filed by Black American employees are not justified, because black people lack the abilities to perform their duties, so they resort to playing the "race card". THIS CASE WILL PROVE YOU WRONG!

The evidence in this case overwhelmingly demonstrates that that the above-named defendants have played the "race card", as I, and other black employees were subjected to disciplinary actions, based on personal biases and stereotypes of black people, with management supported their actions with false accusations and manipulated performance factors, resulting in unequal treatment based on race. Despite

| Case #: | DOCUMENT 1 | Filed November 9, 2023 |

only a handful of black employees, this case will demonstrate, we have been subjected to Hostile Work Environments of constant hurdles being placed to undermine our abilities to perform our duties.

## III    PARTIES

**Plaintiff - Peter Garrison, Revenue Tax Specialist**

12.    Plaintiff, Peter Garrison, a pro se litigant, is a natural born Black-American citizen, who is at least 40-years old. Garrison is well qualified for his position with a Bachelor of Science in Accounting Degree from Upper Iowa University, where he graduated Cum Laude and over thirty years of superior performance as a tax auditor. Garrison is a 30-year employee of the Minnesota Department of Revenue, initially hired in 1986, as part of Minnesota's out-of-state audit program. Initially, Garrison worked in the New York office before transferring to the Cleveland office in 1987. In the Cleveland office, Garrison was named the Administrative Lead-worker for the office and the Technical Lead-worker the entire out-of-state East staff. In 1994 Garrison transferred to the Washington DC office, where he telecommuted from his home in Virginia.

13.    Complainant is an individual with a disability within the meaning of 42 U.S.C. § 12102 because he has the diabetes and suffers from depression caused by being subjected to a Hostile and Abusive work environment, causing him physical and mental impairments that "substantially limiting his ability to function, absent working extra hours each day." 29 C.F.R. § 1630.2(j)(3)(iii).

14.    Complainant is also an individual with a disability within the meaning of the ADA because Defendant regarded Complainant as having a disability 42 U.S.C. § 12102(3).

15.    Despite his known disability, prior to the imposition of a termination strategy, Pete Garrison has always exceeded performance standards.

Case #:                    DOCUMENT 1                    Filed November 9, 2023

16. Plaintiff Pete Garrison has spent over three decades performing his duties with the highest standards, dedication and professionalism. In 1992, he was considered one of the top two auditors in the Sales Tax Division and since that time his contributions and performance has only improved. In 1992, he was one of two auditors selected for job audits, which led to him becoming one of the first Principal RTS auditors in the Sales Tax Division (1993). Garrison's previous supervisors regularly referred to his auditing skills, as a "unique".

17. Throughout the nearly 3 decades, prior to 2012, it is well documented that I performed my duties at the highest level of professionalism, knowledge and a commitment to the success of the Sales Tax Division. These facts are demonstrated in the Exhibits attached to this lawsuit, and other exhibits that will be submitted to the court as evidence. Exhibit I is my resume, which references examples of my accomplishments. Exhibit 2 is Module 1, which is a compilation of documents, demonstrating my performance in the years before, I was subjected to a *hostile work environment*, designed to end my career based on lies, deception, and manipulation, which continued until my constructive discharge (retirement) on October 10, 2023. Module 1 is broken down into 6 parts:

*Part 1(Page 1) - Includes a Certificate of Commendation from Minnesota Governor Arne Carlson, as well as, many other Recognitions and Awards;*

*Part 2 (Page 30) – Examples of Lead-Worker Assignments, both with the State of Iowa's Department of Taxation and the State of Minnesota, listing responsibilities and duties;*

*Part 3 (Page 43) – Example of functions that I performed as Lead-worker, and an email recognizing me for training Tom Bertler.*

*Part 4 (Page 47) – A listing of most Performance Ratings through 2012 and snippets from Annual Performance Reviews, many of which recorded my performance at the highest rating.*

*Part 5 (Page 82) – Examples of Revenue production through the years.*

*Part 6 (Page 94) - Examples of Precedent Setting Audit Issues*

| Case #: | DOCUMENT 1 | Filed November 9, 2023 |

18. My former supervisors of nearly three decades (John Meyers & Tom Woessner) intend on testifying in court, wherein, they will confirm the items listed in Module 1 accurately represent Garrison's performance during the years of that I was under their supervision. Tom Woessner and John Meyers, both white males, will assert that throughout my career, I had always been valued as the highest performing Sales Tax Auditor in the entire Sales Tax Division, and I was noted for being a tireless worker, often working evenings, weekends, and holidays, as I performed the most complex audits of the largest companies in the world. My audits regularly identified previously overlooked precedent setting audit issues, both for the State of Minnesota and nationally, resulting in significant audit revenue production, as I led the entire Sales Tax Division in audit revenue production for over a quarter-century.

19. The evidence in this case demonstrates that, before the implementation of the Terrmination Strategy, which occurred shortly after the widespread changes in management in the post baby-boomer years, he was recognized with "outstanding" performance ratings, numerous accolades for a job well done, and other performance recognitions, which included a *"Certificate of Commendation"* from Governor Arne Carlson - the only out- of-state sales tax auditor in the thirty-plus years of the out-of-state program to receive such an honor. I represented the Department of Revenue in cases in Tax Court, I presented training in Division-wide training seminars, I participated in writing laws for the State; I participated in developing six Revenue Notices, and he was often asked to develop tax policies and participate on Policy Teams for the Department of Revenue. As noted in the email below, I was the *"go-to"* person in the Sales Tax Division.

Case #:  DOCUMENT 1  Filed November 9, 2023



20. Another example is the statement from November 8 1995, wherein, then supervisor, John Myers, added an addendum to Peter Garrison's performance review which was placed in his personnel file, (I suspect that this statement has been eliminated from Garrison's personnel file, as he was informed that HR was removing positive statements from his personnel file.

21. The statement requested that Garrison participated in the writing of a Revenue Notice.

> I want to recognize Pete for the extra effort that that he made on an audit of a major ▇▇▇ company. Pete's research of case law, constitutional law, and tax publications was helpful in determining Department's final position on the taxability of ▇▇▇ purchased by ▇▇▇ companies for use in their operations. Because of Pete's knowledge of this particular issue, the Director of Appeals and Legal Services asked him to review and comment on a draft of the Department's proposed Revenue Notice on the issue.

## Defendants

**Defendant – The Minnesota Department of Revenue**

22. Defendant, the State of Minnesota's Department of Revenue, is a public entity. The main office is located at 600 North Robert St., St. Paul, MN 55146. In recent years, the Sales Tax Division of the

Case #:                          DOCUMENT 1                    Filed November 9, 2023

Department of Revenue has dealt with significant changes in management due to retirements of experienced individuals who began their careers around 1967, when the State of Minnesota adopted Sales Tax.

23. The Minnesota Department of Revenue is a "person" within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., a "state" within the meaning of 42 U.S.C. § 2000e(i), an "employer" within the meaning of 42 U.S.C. § 2000e(b) and an employer within the meaning of 42 U.S.C. § 12111(5), and a covered entity within the meaning of 42 U.S.C. § 12111(2) and 29 C.F.R. § 1630.2

24. On October 29, 2013, the Department of Revenue was cited for violating Title I of the American Disability Act. The Equal Employment Opportunity Commission (EEOC) and defendant Kathy Zieminski executed an "EEOC Conciliation Agreement" (See Exhibit). Despite the agreement, the defendants violated the Conciliation Agreement, and well as the Americans with Disabilities Act, by denying Garrison a reasonable accommodation by ending the harassment that caused Garrison's disability to worsen dramatically and cause him to suffer from depression and panic attacks.

**Defendant – Kennedy Gisemba**

25. Kennedy Gisemba, Individually and in his official capacity as Assistant Director of the Sales and Use Tax Division.resides within the State of Minnesota and is employed by the Minnesota Department of Revenue Minnesota Department of Revenue in their offices located at 600 North Robert St., St. Paul, MN 55146. At all times of this complaint, defendant **Kennedy Gisemba**, under 42 U.S.C Section 1983, is a person who acted "under the color of state law" to violate "clearly established statutory and constitutional rights of which a reasonable person would have known." **Kennedy Gisemba** became the Plaintiff's supervisor on May of 2015.

26. Kennedy Gisemba, is well known in the division for carrying out the agenda of management. He has been directly involved in discrediting my performance factors and he has director my current supervisor, Dave Denault to continue to do so, after Kennedy became the Assistant Director of the division. His actions are based on his stereotypes of Black Americans. He has mischaracterized my performance, solely to discredit me in the Department and justify the disciplinary actions that have been imposed on me. Kennedy exemplifies everything that is being said regarding the underlining purpose for African immigrants, who come to the United States to displace Black Americans.

27. There are numerous YouTube programs regarding this strained relationship, such as the following link, explaining African immigrants' opinions of Black Americans. May I suggest Googling topics such as, "why do Africans hate Black Americans". *"Godfrey Agrees with Freeway Ricky: Africans Look Down on Black Americans (Part 5) - Bing video*

**Defendant – Gina Armacher**

28. Gina Armacher, Individually and in her official capacity as Director, Sales and Use Tax Division, for the Minnesota Department of Revenue. **Gina Armacher** resides within the State of Minnesota and is employed by the Minnesota Department of Revenue Minnesota Department of Revenue in their offices located at 600 North Robert St., St. Paul, MN 55146. At all times of this complaint, defendant **Gina Armacher**, under 42 U.S.C Section 1983, is a person who acted "under the color of state law" to violate "clearly established statutory and constitutional rights of which a reasonable person would have known. Gina directly participated in depriving Garrison of his Substantive and Procedural Due Process rights, by making arbitrary and unsubstantiated claim in the disciplinary actions regarding audits completed, without any regard to Garrison's performance review period of February 25 – February 24.

Case #:                                DOCUMENT 1                        Filed November 9, 2023

**Defendant – David Denault**

29.     David Denault, Individually and in his Official capacity as Revenue Tax Supervisor, with the Minnesota Department of Revenue – under the guidance of both Division Director Gina Armacher, HR Consultant Angela Smedlund, and Assistant Director Kennedy Gisemba; David Denault has been required to impose tangible disciplinary actions, largely based on performance factors that violate my Substantive Due Process Rights, which have been imposed unequally. David is probably the least guilty of denying Garrison of his Constitutional Rights, as he has been directed to perform these acts. Denault, resides within the State of Minnesota and is employed by the Minnesota Department of Revenue Minnesota Department of Revenue in their offices located at 600 North Robert St., St. Paul, MN 55146. At all times of this complaint, defendant David Denault, under 42 U.S.C Section 1983, is a person who acted "under the color of state law" to violate "clearly established statutory and constitutional rights of which a reasonable person would have known.

**Defendant – Angela Smedlund**

30.     Angela Smedlund, Individually and in her Official capacity as Labor Relations Consultant, for the Minnesota Department of Revenue has been directly involved in depriving Garrison of his Constitutional Rights for Equal Treatment, and my 14th Amendment Rights for Substantive and Procedural Due Process. resides within the State of Minnesota and is employed by the Minnesota Department of Revenue Minnesota Department of Revenue in their offices located at 600 North Robert St., St. Paul, MN 55146. At all times of this complaint, defendant Angela Smedlund, under 42 U.S.C Section 1983, is a person who acted "under the color of state law" to violate "clearly established statutory and constitutional rights of which a reasonable person would have known.

Case #:                         DOCUMENT 1              Filed November 9, 2023

## IV    ADMINISTRATIVE REQUIREMENTS

31.   No administrative exhaustion or other conditions precedent are required prior to the filing of claims under 42 U.S.C. §1983.

32.   All required conditions precedent required under Title VII (42 U.S.C. §2000e et seq.) and the American with Disabilities Act (ADA) have been exhausted and/or performed by Garrison prior to the filing of this complaint. In December 1990, the federal four-year statute of limitations went into effect, which applies to federal causes of action arising under federal statutes with no statute of limitations. The four-year federal statute of limitations applies to ADA claims.

33.   The ADA complaint was filed due to intentional and malicious actions, subjecting Garrison to an "hostile work environment" thereby, causing a worsening of Garrison's physical and mental conditions, some of which are now permanent health conditions.

34.   Garrison received a Right to Sue Letter for "unlawful employment practices" pursuant to Code Section, 42 U.S.C. § 2000e-2(a)

Case #:                           DOCUMENT 1                  Filed November 9, 2023

## V    SUMMARY OF CASE

35. This case is about the stellar three-decade career of plaintiff Pete Garrison, who just two weeks before Linda Craigie became his supervisor, received an "Outstanding" performance rating in his annual performance review period ending on February 24, 2012. Less than a year after receiving the "Outstanding" Performance Rating,

36. This case is about the deliberate, illegal and unethical violations of Garrison's protected rights under the US Constitution, violations of the Americans with Disabilities Act, and violations of Title VII's provisions prohibiting "Intentional Discrimination", "Hostile Work Environment" and "Retaliation" for engaging in protected conduct, all of which is actionable under the Civil Rights Act.

37. This case is about facts and evidence that prove that the beginning in late 2012, the defendants conspired to ruin plaintiff Garrison's career, by manipulation audit assignment, falsified facts, making unfounded claims of rule violations, and making false accusations of poor performance in disciplinary actions and performance reviews.

38. This case is about the Defendants knowingly and intentionally interfering with plaintiff Garrison's contractual relationship with the agency, by subjecting Garrison to performance improvement plans (PIP) which is in substance a termination strategy, design to cause Garrison harm.

39. On October 6, 2022, the Defendants issued Garrison a Tangible Disciplinary document, which did not specifically state Garrison's so-called misconduct, nor did the document list Garrison's performance period,

| Case #: | DOCUMENT 1 | Filed November 9, 2023 |

40. Garrison's audit requirements are based on an annual review period of February 25 – February 24th. Furthermore, Garrison was subject to baseless additional requirements for submission of his audits, not required of his peers in the office.

41. Also, in February or March, Garrison requested additional audit assignment, but David Denault, did not assign audits to him and stated, I didn't know you wanted audits(????)

42. Garrison was suspended the final 10 days of his review period, so that he could not turn in audits to meet his case count goals.

43. In February of 2022, Garrison turned in an audit after midnight, on the last day. The lead-worker stated that she would not process the audit because it was turned in after midnight – 21 Day before the waiver date. However, when I submitted the audit, it was apparent that other audits were submitted with less that 14 days of processing time.

44. I was suspended 10 days, to prevent me from submitting my audits. While I was out, the supervisor informed a taxpayer that I would redo the audit. This is the audit that they refer to in the discharge letter.

# CAUSES OF ACTION

# COUNT I

### Title VII—Discrimination and Retaliation on the Basis of Race

45. Plaintiff Peter Garrison realleges the foregoing paragraphs as though fully set forth herein.

46. Peter Garrison is a member of a protected class on the basis of Race.

47. In all respects, for over a quarter-century, Pete Garrison was performing his job in a highest-level performance and professionalism, above and beyond the norms of the Sales Tax Division.

48. The Sales Tax Division of the Minnesota Department of Revenue, discriminated against Garrison as described herein, including but not limited to causing him to be subjected to a hostile work environment, denying her promotions and causing him to be subjected to constructive termination.

49. The Sales Tax Division of the Minnesota Department of Revenue, retaliated against the plaintiff, as described above.

50. The Sales Tax Division of the Minnesota Department of Revenue, actions were taken with a willful and wanton disregard of Garrison rights under Title VII.

51. As a direct and proximate result of said unlawful employment practices and in disregard of Garrison's rights and sensibilities, Garrison has suffered lost wages, humiliation, degradation, emotional distress, depression, and anxiety attacks.

# COUNT II

## Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et. seq., for employment discrimination on the basis of race. Discrimination and Retaliation on the Based-on Race

52. Plaintiff Peter Garrison realleges the foregoing paragraphs as though fully set forth herein.

53. Peter Garrison is a member of a protected class on the basis of race. He is a Black American born in the United States, and deserving of his Constitutional Rights.

54. In all respects, for over a quarter-century, Pete Garrison was performing his job in a highest-level performance and professionalism, above and beyond the norms of the Sales Tax Division.

55. The Sales Tax Division of the Minnesota Department of Revenue discriminated against Garrison as described above, including but not limited to harassing him, subjecting him to a hostile work environment, denying him equal treatment in all aspects of his job, resulting in his constructive discharge in October of 2022.

56. The Sales Tax Division of the Minnesota Department of Revenue also retaliated against the plaintiff as described above.

57. The Sales Tax Division of the Minnesota Department of Revenue actions were taken with a willful and wanton disregard of the plaintiff's rights under Section 1981 and Section 1983.

58. As a direct and proximate result of said unlawful employment practices and in disregard of Garrison's rights and sensibilities, Garrison has suffered lost wages, humiliation, degradation, emotional distress, depression, and anxiety attacks.

Case #:                         DOCUMENT 1                    Filed November 9, 2023

# COUNT III

## Violation of Title I of the Americans with Disabilities Act

*To enforce the statutory and regulatory provisions of Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111-17, as amended, which incorporates, through 42 U.S.C. § 12117(a), the powers, remedies, and procedures set forth in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.*

59. Plaintiff Peter Garrison realleges the foregoing paragraphs as though fully set forth herein.

60. Title I of the ADA, 42 U.S.C. §§ 12111-12117, and its implementing regulation, 29 C.F.R. Part 1630, prohibit covered entities, such as the defendants from discriminating against qualified individuals on the basis of disability in regard to the constructive discharge of employees and other terms, conditions, and privileges of employment.

61. Complainant is a qualified individual with a disability within the meaning of the ADA who during all relevant time periods Garrison performed the essential functions of a sales tax auditor, with or without accommodation. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m).

62. Defendants discriminated against Complainant in violation of 42 U.S.C. § 12112(a) and 29 C.F.R. § 1630.4 by imposing unequal and arbitrary performance requirements, under the disguise of a Performance Improvement Plan, which was solely designed to cause him a tangible employment disciplinary actions, on the basis of his disability,

63. Garrison is a member of a protected class on the basis of race. He is a Black American born in the United States, with two qualifying disabilities.

64. In all respects, for over a quarter-century, Pete Garrison was performing his job in a highest-level performance and professionalism, above and beyond the norms of the Sales Tax Division.

| Case #: | DOCUMENT 1 | Filed November 9, 2023 |

65. The Sales Tax Division of the Minnesota Department of Revenue discriminated against Garrison as described above, including but not limited to harassing him, subjecting him to a hostile work environment, denying him equal treatment in all aspects of his job, resulting in his constructive discharge in October of 2022.

66. The Sales Tax Division of the Minnesota Department of Revenue also retaliated against the plaintiff as described above.

67. The Sales Tax Division of the Minnesota Department of Revenue actions were taken with a willful and wanton disregard of the plaintiff's rights under Section 1981 and Section 1983.

68. As a direct and proximate result of said unlawful employment practices and in disregard of Garrison's rights and sensibilities, Garrison has suffered lost wages, humiliation, degradation, emotional distress, depression, and anxiety attacks.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff Peter Garrison prays that this Court:

A. Enjoin Defendant and its agencies, agents, employees, successors and all persons in active concert or participation with it, from engaging in discriminatory employment policies and practices that violate Title I of the ADA;
B. Require Defendant to modify its policies, practices, and procedures as necessary to bring its employment practices into compliance with Title I of the ADA;
C. Award Complainant compensatory damages, including damages for emotional distress, for injuries suffered as a result of the discrimination alleged in this Complaint pursuant to 42 U.S.C. § 1981a;
D. Enter judgment in favor of Peter Garrison and against the Defendants for violation of Garrison's Rights under Title VII, Section 1983, the Americans with Disabilities Act and Section 1981, in the

amount of $1,000,000.00;

E. Award Peter Garrison punitive damages in such amount of $4,000,000.00, for their disregard for Garrison life, livelihood, and depriving him of his life for the past decade plus;

F. Award Peter Garrison other costs, attorneys' fees, and non-taxable expenses which he incurred in his pursuit of justice; and

G. Grant Peter Garrison such other and further relief as the Court deems equitable and just.

## VI    JURY DEMAND

The United States hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

*[Signature]*
Pro Se
10/9/23