## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Peter Garrison, | No. 23-cv-03485 (KMM/DTS) |
| Plaintiff, | |
| v. | **ORDER** |
| Minnesota Department of Revenue of the State of Minnesota, et al., | |
| Defendants. | |

---

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff Peter Garrison's Complaint alleging numerous civil rights violations. ECF 7. For the reasons addressed below, Defendants' motion is granted, and Mr. Garrison's Complaint is dismissed.

## BACKGROUND

Plaintiff Peter Garrison, a pro se litigant, is a "natural born Black-American citizen" who is at least 40 years old. Compl. ¶ 12, ECF 1. He worked for the Minnesota Department of Revenue ("DOR") for thirty years and was hired in 1986 as part of Minnesota's out-of-state audit program. *Id.* Throughout the course of his employment, Mr. Garrison received numerous awards and many positive performance reviews. *Id.* ¶ 17.

On November 9, 2023, Mr. Garrison filed this civil rights action in federal court against the Minnesota Department of Revenue and four[1] of its employees (collectively, the "Defendants"). Although some parts of his Complaint are quite clear, others are a bit hard to follow. In broad strokes, Mr. Garrison alleges that on October 6, 2022, he received a disciplinary document, although it did not specify any wrongdoing or his performance period. Compl. ¶ 39. It appears from the full record that this document constituted a termination notice of some sort. He further alleges that during his employment, he was subjected to unjustified additional procedures for submitting audits that his peers did not have to follow. *Id.* ¶ 40. The Complaint states that Mr. Garrison asked for more audit assignments in February or March of an unspecified year, but he did not receive any. *Id.* ¶ 41. Mr. Garrison claims that in order to prevent him from submitting audits in time to satisfy his case count, he was suspended for the last ten days of his review period; though it is not clear, it appears that this suspension took place in 2021. *Id.* ¶ 42. Lastly, Mr. Garrison alleges that he submitted an audit in February 2022 after midnight and that a lead worker refused to process it until after it was submitted. *Id.* ¶ 43. Overall, Mr. Garrison alleges that he was either terminated, given notice of a forthcoming termination, or constructively discharged on October 6, 2022.

In his Complaint, Mr. Garrison specifically lists two counts of "discrimination and retaliation" in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et*

---

[1] The four named employees in Mr. Garrison's complaint are Gina Armacher, Director of Sales and Use Tax Division; Kennedy Gisemba, Assistant Director of the Sales and Use Tax Division; David Denault, Revenue Tax Supervisor; and Angela Smedlund, Labor Relations Consultant (the "individual defendants").

*seq.*, against the DOR and its employees, and a claim of discrimination in violation of Title I of the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12112. Within these three specifically itemized counts, the Court generally construes Mr. Garrison's Complaint to allege a hostile workplace environment, failure to promote, constructive termination, actual termination, disparate treatment, and retaliation on the basis of race. He also appears to allege disparate treatment and harassment due to disability. Mr. Garrison seeks millions of dollars in damages for these alleged violations of his civil rights under federal law.[2]

Defendants now ask the Court to dismiss Mr. Garrison's Complaint. Mot., ECF 7. They first argue that all claims against the individual defendants must be dismissed because individuals cannot be liable under Title VII or Title I of the ADA. Next, Defendants contend that several of Mr. Garrison's claims must be dismissed for failure to exhaust his administrative remedies because he did not raise those issues in the charge he filed with the EEOC. Finally, the Defendants argue that because the Complaint fails to adequately state any claim, it should be dismissed under Fed. R. Civ. P. 12(b)(6).

---

[2] Mr. Garrison references 42 U.S.C. § 1983 in his Complaint and briefing, and mentions concepts associated with § 1983 claims such as due process and "individual and official capacities." But he does not raise any § 1983 claim in any of the three counts, nor does he suggest in the body of the Complaint or in his briefing that he intends to raise such claims. Further, in their Motion, the Defendants construed Mr. Garrison's Complaint as alleging claims under the ADA and Title VII, but not § 1983. Mr. Garrison did not contest that characterization in his opposition to the Motion to Dismiss. Mem. in Opp'n, ECF 19. Therefore, the Court does not construe the Complaint to assert any claim under § 1983.

## DISCUSSION

### I.    Legal Standard

To survive a motion to dismiss, a complaint must allege sufficient facts to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations that raise only a speculative right to relief are insufficient. *Twombly*, 550 U.S. at 555. A district court accepts as true all of the plaintiff's factual allegations and views them in the light most favorable to the plaintiff. *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). But legal conclusions couched as factual allegations are not given the same deference. *Twombly*, 550 U.S. at 555. And mere "labels and conclusions" as well as a "formulaic recitation of the elements of a cause of action" are not enough to state a claim for relief. *Id.*

Although courts construe a *pro se* plaintiff's complaint liberally, the complaint must allege sufficient facts to support the plaintiff's claims. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). And "pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) (per curiam); *see also Stone*, 364 F.3d at 914 (applying a "general rule" of waiver to a *pro se* party).

### II.    Failure to Exhaust

Both Title VII and the ADA require that before a plaintiff can sue in court to allege unlawful discrimination, he must file a timely charge with the Equal Employment Opportunity Commission ("EEOC") or a state or local agency with authority to seek relief.

4

*Weatherly v. Ford Motor Co.*, 994 F.3d 940, 944 (8th Cir. 2021) (ADA exhaustion)[3];

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012) (Title VII

exhaustion, citing 42 U.S.C. § 2000e–5(e)(1)); *see also Nat'l R.R. Passenger Corp. v.

Morgan*, 536 U.S. 101, 109 (2002) (explaining requirements for exhaustion in a state with

local agencies). "'[A] plaintiff will be deemed to have exhausted administrative remedies

if the allegations of the judicial complaint are like or reasonably related to the

administrative charges that were timely brought.'" *Smith v. Brennan*, No. 20-cv-00498

(SRN/DTS), 2020 WL 7232288, at *9 (D. Minn. Dec. 8, 2020) (quoting *Wedow v. City of

Kansas City*, 442 F.3d 661, 672 (8th Cir. 2006)).

    A plaintiff must file a charge with the EEOC within 300 days of the adverse

employment actions at issue. *Hales v. Casey's Mktg. Co.*, 886 F.3d 730 (8th Cir. 2018)

(citing 42 U.S.C. § 2000e-5(f)(1)); *see also Strickland v. Minn. AFL-CIO*, No. 17-cv-5071

(SRN/BRT), 2018 WL 6004301, at *3 (D. Minn. Oct. 1, 2018), *R&R adopted by* 2018 WL

6003972 (D. Minn. Nov. 15, 2018). If the agency dismisses the charge and notifies the

complainant of her right to sue, then the complainant has ninety days to bring a civil action

in federal court. 42 U.S.C. § 2000e–5(f)(1). "The reason for requiring the pursuit of

administrative remedies first is to provide the EEOC with an initial opportunity to

investigate allegations of employment discrimination and to work with the parties toward

---

[3] Failure to exhaust administrative remedies is an affirmative defense that can only be a basis for dismissal where the failure to exhaust is clear from the face of the complaint. *Miles v. Bellfontaine Habilitation Ctr.*, 481 F.3d 1106, 1107 (8th Cir. 2007). As explained below, the Court concludes that Mr. Garrison's failure to properly exhaust certain claims is apparent from his Complaint.

voluntary compliance and conciliation." *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005); *see also Shannon v. Ford Motor Co.,* 72 F.3d 678, 684 (8th Cir. 1996) ("The proper exhaustion of administrative remedies gives the plaintiff a green light to bring [his or] her employment-discrimination claim, along with allegations that are 'like or reasonably related' to that claim, in federal court.").

On August 1, 2023, Mr. Garrison filed an EEOC charge, which was within 300 days of his apparent termination or resignation. EEOC Charge, ECF 1-1. In his charge, Mr. Garrison alleged that, in retaliation for a 2014 lawsuit, the Defendants informed him he could quit rather than be fired. He also mentioned seeking a reasonable accommodation, but being denied. Finally, Garrison alleged that he was constructively discharged "on or about" October 6, 2022. *Id.* He also described his belief that he has been discriminated against due to his disability and his race, and has been retaliated against for participating in protected activity. *Id.*

The Defendants argue that many of the claims raised in the Complaint are not included in the EEOC charge and must therefore be dismissed for failure to exhaust. The Court agrees in part. The Court finds that any harassment or hostile workplace environment claim in Mr. Garrison's Complaint was not exhausted because it was not raised or even hinted at in the EEOC charge. In addition, to the extent that his Complaint can be read to allege that other workplace actions—such as failure to promote, the imposition of greater requirements on him than others, and temporary suspensions from work—are the result of disparate treatment based on race or disability, he did not exhaust those claims. *Hill v. DeJoy*, No. 4:19-CV-1315 RLW, 2021 WL 4476695, at *19 (E.D. Mo. Sept. 30, 2021);

6

*Onyiah v. St. Cloud State Univ.*, 655 F. Supp. 2d 948, 965 (D. Minn. 2009) ("A Title VII plaintiff generally does not exhaust her administrative remedies unless she complains of the discriminatory behavior to the EEOC before filing a lawsuit.") (brackets removed); *see, e.g.*, *Richter*, 686 F.3d at 851 (former employee's retaliation claim arising from her EEOC discrimination charge was not excepted from Title VII's administrative exhaustion requirement because the retaliation claim was discrete from the original discrimination claim, and employee failed to file an EEOC charge with respect to each alleged unlawful employment practice).

The Court finds that these specific claims do not grow out of, nor are they reasonably related to, the claims Mr. Garrison did include. *Newkirk v. GKN Armstrong Wheels, Inc.*, 168 F. Supp. 3d 1174, 1188 (N.D. Iowa 2016) ("[T]he Eighth Circuit Court of Appeals has repeatedly recognized that a plaintiff may 'seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge.'") (quoting *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 887 (8th Cir. 1998); *cf. Hill*, 2021 WL 4476695, at *19 ("'[T]here is a difference between liberally reading a claim that 'lacks specificity,' . . . and inventing . . . a claim which simply was not made.'") (quoting *Shannon*, 72 F.3d at 685). And because Mr. Garrison did not include any hostile workplace misconduct or ongoing harassment in his EEOC charge, he is not entitled to the slightly more lenient lens applicable to continuing violations. *Morgan*, 536 U.S. at 113 (explaining that hostile-work-environment claims "involve[] repeated conduct"); *id.* at 122 ("A charge alleging a hostile work environment claim . . . will not be time barred so long

as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.").

In addition, even if Mr. Garrison had been more specific in his EEOC filing, only those events which occurred on or after October 5, 2022 could be considered due to the deadline on such filings. *See Onyiah*, 655 F. Supp. 2d at 963 ("[A] complainant must file a charge within 300 days from the date of the alleged unlawful employment action.") (quotation omitted)*; Davis v. Lohr Distrib. Co, Inc.*, No. 4:18cv1437, 2019 WL 2053848, at *6 (E.D. Mo. May 9, 2019) (acknowledging "an exception to [*Morgan*'s] bar on the consideration of discriminatory actions that occur outside the statutory period, but solely for hostile work environment claims"). Aside from the allegation of constructive termination or termination, the incidents Mr. Garrison specifically describes in his Complaint, such as not accepting a certain audit report for review and a ten-day suspension, occurred well before this date.

For these reasons, the Court finds that Mr. Garrison's claims of harassment and hostile workplace environment, failure-to-promote, and general disparate treatment based on race or disability were not exhausted before the EEOC and must be dismissed on that basis. Additionally, because the deadline is long past for those claims to be raised before the EEOC, the dismissal of these claims will be with prejudice. *See Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 758 (8th Cir. 2021) ("It is well settled that a district court may dismiss a complaint with prejudice under Rule 12(b)(6) when amendment of a complaint would be futile."). And Mr. Garrison alleges no facts by which this Court can reasonably infer that an exception to the timeliness requirement could be warranted. *See,*

*e.g.*, *Rodriguez v. Wal-Mart Stores, Inc.*, 891 F.3d 1127, 1129 (8th Cir. 2018) (discussing potential bases for applying equitable tolling or equitable estoppel to the statutory requirement for a timely submission of EEOC charges). In contrast, the Court finds that Mr. Garrison's allegations regarding constructive discharge, and any challenge to his termination based on either retaliation or discrimination on the basis of race or disability were adequately exhausted.[4]

### III.     Individual Liability

Mr. Garrison's Complaint is brought not only against the DOR but also against four individuals who work there: Gina Armacher, Kennedy Gisemba, David Denault, and Angela Smedlund. The Complaint describes their roles with the DOR as two directors, one supervisor, and a consultant. However, employment discrimination claims under both Title VII and the ADA may only be brought against employers, not against individuals who also work for that employer. Therefore, the claims against the individual defendants fail as a matter of law. They will be dismissed with prejudice.

### A.     Title VII

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect

---

[4] Because Mr. Garrison provides almost no detail about his request for accommodation, as discussed below, it is impossible to tell whether it was fully exhausted by inclusion in the EEOC charge or whether it was submitted too late. Specifically, it is unclear whether the accommodation request was made at the end of his employment, in which case it was timely included with his EEOC claim, or made at an early date, in which case it was likely not timely. The Court will consider this question if Mr. Garrison chooses to amend his complaint and to include any claims related to his request for accommodation.

to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Nahal v. Allina Health Sys.*, No. 18-cv-631-DWF-KMM, 2018 WL 6729660, at *4 (D. Minn. Oct. 4, 2018) (quoting 42 U.S.C. § 2000e–2(a)(1)), *R&R adopted,* 2018 WL 6727066 (D. Minn. Dec. 21, 2018). But, as this Court explained in *Nahal*

> The Eighth Circuit has held that supervisors, coworkers, and managers are not individually liable under Title VII. *Van Horn v. Best Buy Stores, LP.*, 526 F.3d 1144, 1147 (8th Cir. 2008) ("The district court properly granted [] judgment in favor of Mr. Clark on the Title VII claim because that law does not provide for an action against an individual supervisor. . . ."); *Bales v. Wal-Mart Stores, Inc.*, 143 F.3d 1103, 1111 (8th Cir. 1998). The reason for this rule is that "liability under [Title VII] can attach only to employers." *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994) (citing 42 U.S.C. § 2000e(b) for the definition of "employer" and affirming district court's dismissal of individual defendants who were plaintiff's coworkers).

2018 WL 6729660, at *4. Here, because there are no allegations that the named individual Defendants were in fact Mr. Garrison's employer, he has failed to state a claim under Title VII.

## B.   ADA

The law is somewhat less settled regarding whether individual liability exists under Title I of the ADA. Nonetheless, the Court concludes that the statute does not give rise to such liability, and therefore Mr. Garrison's ADA claims against the individual defendants must be dismissed as well.

Under the ADA, an employer is "a person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such person." *Nahal*, 2018

WL 6729660, at *5 (quoting 42 U.S.C. § 12111(5)(A)). Although individual liability under Title I of the ADA has not been explicitly addressed by the Eighth Circuit, other circuit courts have concluded that the ADA's definition of "employer" precludes individual liability. *Id.* (citing *Albra v. Advan, Inc.,* 490 F.3d 826, 830 (11th Cir. 2007); *Butler v. City of Prairie Village, Kan.,* 172 F.3d 736, 744 (10th Cir. 1999); *U.S. EEOC v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1280–82 (7th Cir. 1995)). And several district courts within the Eighth Circuit have concluded that individuals are not liable under Title I of the ADA. *See Kristensen v. Greatbach*, No. 11-cv-3318 (MJD/TNL), 2012 WL 4479244, at *4 (D. Minn. Sept. 28, 2012) (dismissing ADA claims against individual defendants) (citing *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999), and *Ebersole v. Novo Nordisk, Inc.*, No. 1:11cv25 SNLJ, 2011 WL 6115655, at *1 (E.D. Mo. Dec. 8, 2011)). Additionally, the Eighth Circuit has ruled that Title II of the ADA, which "provides disabled individuals redress for discrimination by a 'public entity,'" does not permit suits against specific government officials in their individual capacity. *Alsbrook*, 184 F.3d at 1005 n.8. In reaching its decision, the *Alsbrook* court cited other circuits' precedent in concluding that "individuals who do not otherwise qualify as 'employers' under the statutory definition are not liable under Title I." *Id.* (citing *Butler*, 172 F.3d at 744, *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996), and *AIC Security*, 55 F.3d at 1280–82).

Given the Eighth Circuit's conclusion that individual liability is not permitted under Title VII, the Eighth Circuit's holding in *Alsbrook* that there is no individual liability under Title II of the ADA, and the numerous sister circuits and district courts who have reached the same conclusion as to Title I, this Court holds that there is no individual liability under

Title I of the ADA. Because there are no allegations from which the Court could conclude that any of the individual defendants was actually Mr. Garrison's employer under the ADA, all claims against them must be dismissed.

## IV.    Failure to State a Claim

Finally, the Court turns to the Defendants' argument that all of Mr. Garrison's claims are also subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A.    Hostile Workplace Environment/Harassment

The Court construes Count I of Mr. Garrison's Complaint to allege that he was subjected to a hostile workplace environment or unfair harassment on the basis of race. Although the Court already found that dismissal of this claim is appropriate because it was not properly exhausted before the EEOC, the Court also concludes that Mr. Garrison's Complaint fails to adequately state a claim of a hostile workplace environment.

The Eighth Circuit has made clear that only harassment or workplace racist hostility that is severe, pervasive, and widespread will support such a claim. *See Abdel-Ghani v. Target Corp.*, 686 F. App'x 377, 379 (8th Cir. 2017) (finding that comments made did not support a hostile work environment claim because even though they were "morally repulsive . . . they were not physically threatening") (internal quotation marks omitted) (cleaned up); *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892–93 (8th Cir. 2005) (occasional use of racial epithets did not create a hostile work environment). Routine supervision or the enforcement of workplace requirements cannot meet this standard. *See Clobes v. 3M Co.*, 106 F.4th 803, 807 (8th Cir. 2024) (holding that company's implementing of a "company-wide policy" did not suggest conduct motivated by

discriminatory animus since the policy was neutrally applied). And it must be clear that the mistreatment has a racial nature, as opposed to being generally unpleasant but not based on someone's race or nationality. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006) ("Facially race-neutral statements, without more, do not demonstrate racial animus on the part of the speaker."). Here, Mr. Garrison's allegations simply do not approach the threshold required to allege race-based harassment or a hostile workplace environment. He does not describe conduct that is severe, pervasive, or even clearly based on race. And his mere allegation that he was subject to extra scrutiny because he is among the few black employees at the DOR is inadequate to state a claim under controlling authority.

### B.   Failure to Promote Based on Race

In Count I of his Complaint Mr. Garrison also alleges that he was denied promotions due to his race. Mr. Garrison not only failed to exhaust this claim, but the Complaint insufficiently pleads a failure-to-promote claim. To establish a prima facie case of failure to promote, a plaintiff must show that he was a member of a protected group, that he was qualified for and applied for a promotion to an available position, that he was rejected, and that a similarly qualified employee who was not part of a protected class was promoted instead. *Robinson v. Am. Red Cross*, 753 F.3d 749, 754 (8th Cir. 2014); *compare Reed v. Home Depot USA, Inc.*, 72 F. App'x 495, 496–97 (8th Cir. 2003) (per curiam) (African-American former employee established prima facie case of racial denial of promotion by showing white employee promoted in same department who was less qualified and that racial intolerance was prevalent), *and Sutton v. Rumsfeld*, 343 F.3d 948, 949 (8th Cir. 2003)

13

(per curiam) (male African-American employee's allegations of discrimination regarding a level 13 promotion were reasonably related to allegations contained in his EEOC charge and showed that employer refused to promote employees who were black or over 50 beyond level 12, and that employer discriminated against men), *with Avina v. Union Pac. R.R. Co.*, 72 F.4th 839, 845–46 (8th Cir. 2023) (finding that statements made by railroad warehouse supervisor that Hispanic employee should "not even bother applying" for supervisor position "because she had already made her selection" did not support prima facie failure-to-promote claim), *cert. denied sub nom. Avina v. Union Pac. R.R.*, 144 S. Ct. 555 (2024), *and Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1110 (8th Cir. 1998) (finding that employee failed to establish a prima facie case where employee offered no evidence qualifications or qualifications necessary for position sought, and instead made conclusory assertions that she was qualified for the position).

Mr. Garrison does not identify any specific promotions for which he applied, nor when he did so. He does not allege any details about whether he was qualified for those positions, nor whether they were filled with people of a different race. There is simply no information from which the Court could find an adequately pled claim related to the DOR failing to promote him. This claim must be dismissed.

## C.      Constructive Termination Based on Race

Next, in both Counts I and II, Mr. Garrison asserts that he was constructively discharged due to his race.[5] To prove discriminatory constructive discharge, a plaintiff must show: (1) "he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign," and (2) "he actually resigned." *Green v. Brennan*, 578 U.S. 547, 555 (2016); *see also Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1081 (8th Cir. 2021) (describing constructive discharge claims). Thus, the intolerability of working conditions is judged by an objective standard, not the employee's subjective feelings. *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996) . A plaintiff may "satisfy the intent element by demonstrating that he quit as a reasonably foreseeable consequence of the employer's discriminatory actions." *Tidwell,* 93 F.3d at 494 (citing *Hukkanen v. Int'l Union of Operating Eng'rs,* 3 F.3d 281, 285 (8th Cir. 1993)). The analysis involves consideration of "all of the attendant circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Willis v. Henderson*, 262 F.3d 801, 809 (8th Cir. 2001) (quotation omitted).

---

[5] It is somewhat unclear from Mr. Garrison's Complaint, EEOC filing, and briefing whether he is actually alleging that he was *constructively* discharged, or that he was simply unfairly terminated due to his race. The Court found both to be adequately raised in the EEOC claim to be administratively exhausted, and therefore the Court will consider whether Mr. Garrison adequately pleads a claim on either front.

The factual allegations that appear to support Mr. Garrison's claim of constructive discharge include: being issued one or two suspensions in early 2022, at least one of which was due to an unfair assertion that he had not filed his taxes; not receiving additional audit assignments despite requesting them; being unfairly subjected to a 21-day requirement for submitting audits; one suspension being timed at the end of his performance review period; and lastly, the letter Garrison received on October 6, 2022, advising him that he would soon be fired. However, these facts, taken as true, are insufficient to state a claim for constructive discharge. Such allegations simply do not support a claim that Mr. Garrison's workplace was "'so intolerable that a reasonable person in [his] position would have felt compelled to resign.'" *Watson v. McDonough*, 996 F.3d 850, 856 (8th Cir. 2021) (quoting *Garrison v. Dolgencorp, LLC*, 939 F.3d 937, 943 (8th Cir. 2019)); *see, e.g.*, *Spears v. Mo. Dep't of Corr. & Hum. Res.*, 210 F.3d 850, 855 (8th Cir. 2000) (criticism, reprimand, and the denial of a transfer request did not make conditions intolerable); *but see Kerns v. Cap. Graphics, Inc.*, 178 F.3d 1011, 1016 (8th Cir. 1999) ("Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough to meet the standard."). Several instances of mild workplace discipline spread out over months or years are simply insufficient to support an allegation that a reasonable person would have no choice but to resign. And, as critically, aside from the assertion that he was the only person subject to a 21-day audit deadline, there are no specific allegations that the complained-of acts were actually motivated by Mr. Garrison's race. Even construed liberally, Mr. Garrison's Complaint fails to state a claim for constructive discharge on the basis of race.

### D.    Disparate Treatment: Termination[6]

Although Mr. Garrison repeatedly uses the term "constructive discharge" rather than "discharge," it is somewhat unclear from his filings whether he was fired, quit his employment, or was essentially fired by being forced to quit. To the extent Mr. Garrison intended to allege that he was terminated or discharged by DOR because of his race, he fails to adequately state such a claim. The elements of a prima facie case of disparate treatment under Title VII are that a plaintiff is a member of a protected class, that he was qualified for his job, and that he suffered an adverse employment action under circumstances giving rise to an inference of discrimination. *Tealeh v. DeJoy*, No. 21-cv-1318 (WMW/JFD), 2022 WL 2806437, at *2 (D. Minn. July 18, 2022) (citing *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010)). Here, the same lack of detail which makes it unclear whether Mr. Garrison is claiming constructive discharge or wrongful termination is fatal to both claims. Mr. Garrison alleges no facts related to why or how he was terminated. Nor does he allege any facts from which one could infer that his termination was due to discrimination. For this reason, if Mr. Garrison was in fact fired and intended to allege that his firing was based on race, he did not adequately plead that claim in his Complaint.

---

[6] To the extent that Mr. Garrison's claim that he was denied equal treatment was focused on adverse job actions other than termination, such a claim is not made clear in the Complaint. And any claims that specific adverse employment actions prior to his termination were a result of biased, unequal treatment would not have been timely raised to the EEOC and therefore were not exhausted.

E.     Retaliation

Next, the Court considers Mr. Garrison's claim that he was discharged in retaliation for a lawsuit he filed in 2014. Whether this claim is considered as raising a violation of Title VII or the ADA, Mr. Garrison fails to allege sufficient facts to survive the motion to dismiss.

To plead a prima facie case of retaliation under Title VII, a plaintiff must show "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Sisson v. Salvation Army*, No. 6:14-cv-06090, 2016 WL 4132292, at *5 (W.D. Ark. Aug. 3, 2016) (quoting *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013)[7]). And for a similar claim under the ADA, a plaintiff must allege that "(1) [he] engaged in protected activity; (2) [he] suffered a materially adverse employment action; and (3) the materially adverse action was causally connected to [his] protected activity." *Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013). And in the ADA context, to establish causation, a plaintiff needs to show "the desire to retaliate was the but for cause of [his] termination—that is, that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of" the employer. *Id.* at 737–38 (internal quotations omitted).

---

[7] As recognized in *Cole v. Group Health Plan, Inc.*, 105 F.4th 1110, 1114 & n.1 (8th Cir. 2024), *Jackman* has been partially abrogated by the Supreme Court's decision in *Muldrow v. St. Louis*, 601 U.S. 346 (2024). After *Muldrow*, an employment decision no longer has to be significant, material, or serious to qualify as an adverse employment decision. *Cole*, 105 F.4th at 1114.

Mr. Garrison alleges that his 2014 filing of a discrimination lawsuit is the protected activity for which he was fired. However, the passage of eight years between the lawsuit and his termination is far too long to support an inference that there was a connection between the two events. *See EEOC v. Prod. Fabricators Inc.*, 763 F.3d 963, 973 (8th Cir. 2014) (one year between the protected activity and alleged retaliation is too long to establish a temporal connection). Mr. Garrison cannot plausibly allege that the DOR continued to employ him for so many years and then terminated him in a long-planned retaliation for his lawsuit. This is true whether the retaliation claim is considered under Title VII or the ADA: both must be dismissed.

### F.    Failure to Accommodate/Disability Discrimination

Finally, the Court generously construes Count III of Mr. Garrison's Complaint to raise both a claim of disability discrimination and a claim of failure to accommodate. However, because he pleads neither claim with sufficient specificity, this count must also be dismissed.

A plaintiff must "establish both a prima facie case of discrimination based on disability and a failure to accommodate it" to prevail on a claim for failure to accommodate a disability. *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 905 (8th Cir. 2015). A claim for discrimination under the ADA, requires the plaintiff to plausibly assert that he "'(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of [his] disability.'" *Aronson v. Olmsted Med. Ctr.*, 668 F. Supp. 3d 843, 853 (D. Minn. 2023) (quoting *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2023)). "The ADA defines a disabled person as an

individual with a physical or mental impairment that substantially limits one or more of that person's major life activities, an individual who has a record of such an impairment, or an individual who is regarded as having such an impairment." *Scheffler v. Dohman*, 785 F.3d 1260, 1261 (8th Cir. 2015) (citing 42 U.S.C. § 12102(1)); 42 U.S.C. § 12102(1)(A) (defining disability, in part, as "a physical or mental impairment that substantially limits one or more [of the individual's] major life activities"). "Major life activities include caring for one's self, performing manual tasks, walking, seeing, hearing, breathing, learning, and working." *Dovenmuehler v. St. Cloud Hosp.*, 509 F.3d 435, 439 (8th Cir. 2007).

Here, Mr. Garrison cannot satisfy the first element because he has failed to allege any facts that plausibly show that he is disabled within the meaning of the ADA. While Mr. Garrison asserts that he has diabetes and suffers from depression—disabilities recognized under the ADA—the Complaint includes no allegation about his health, much less allegations that he was regarded by the DOR as having a physical or mental impairment that substantially limits one or more major life activities. The Complaint offers no information linking Mr. Garrison's diabetes or depression to an identifiable "impairment."

Even if Mr. Garrison had plausibly alleged that he is disabled within the meaning of the ADA, his claim would still fail because he does not allege that he sought and was denied an accommodation based on his disability, nor that he suffered any adverse employment consequences due to any potential disability.

And even if Mr. Garrison had alleged more as it relates to his requested accommodation, there is no indication in the Complaint that the DOR was aware that Mr. Garrison suffered from diabetes or was depressed. As such, the DOR "cannot be

faulted for failing to accommodate a disability of which it was not aware." *Hustvet v. Allina Health Sys.*, 910 F.3d 399, 411 (8th Cir. 2018). The Court therefore dismisses Mr. Garrison's failure to accommodate and disability discrimination claims under the ADA.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' motions to dismiss, [ECF No. 7], is **GRANTED**.

2. Plaintiff Peter Garrison's Complaint [ECF No. 1] is hereby **DISMISSED**.

3. Mr. Garrison's claims against the individual defendants Gina Armacher, Kennedy Gisemba, David Denault, and Angela Smedlund are **DIMSISSED WITH PREJUDICE**.

4. Mr. Garrison's unexhausted claims are **DISMISSED WITH PREJUDICE**. These include his claims of hostile workplace environment, failure-to-promote, and general disparate treatment based on race or disability.

5. Mr. Garrison's exhausted claims, including his claims related to his termination, are **DISMISSED WITHOUT PREJUDICE**.

6. Mr. Garrison will be afforded a chance to file an Amended Complaint in which he may replead those claims that are not dismissed with prejudice if he wishes. Any Amended Complaint must be filed on or before October 20, 2024.

Date: September 19, 2024

*s/Katherine Menendez*
Katherine Menendez
United States District Judge